UNITED STATES of America

v.

David HILTON, Defendant.

No. CRIM. 97–78–P–C.

United States District Court,
D. Maine.

March 30, 1998.

Gail Fisk Malone, Asst. U.S. Atty., U.S. Attorney's Office, Bangor, ME, for Government.

Peter Rodway, Rodway & Horodyski, Portland, OR, for Defendant.

## AMENDED MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Defendant David Hilton has been charged with possessing child pornography in violation of section 2252A of the Child Pornography Prevention Act of 1996 (the "CPPA").[1] 18 U.S.C. § 2252A. Defendant's Second Motion to Dismiss (Docket No. 11) ("Defendant's Motion") asserts that the statute under which he is being prosecuted violates the First Amendment to the United States Constitution. For the reasons set forth below, the Court will grant Defendant's Motion.

### I. STATUTORY FRAMEWORK

Defendant is charged with violating section 2252A(a)(5)(B) of the CPPA, which makes it illegal to:

> knowingly possess any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer.

18 U.S.C. § 2252A(a)(5)(B). The term "child pornography" is defined in relevant part as

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where ... such visual de-

---

1. Congress enacted the CPPA as an amendment to the Protection of Children Against Sexual Exploitation Act of 1977, 18 U.S.C. §§ 2251 *et seq.* The CPPA adds section 2252A and amends sections 2251, 2252, and 2256 of chapter 110 of title 18.

piction is, or appears to be, of a minor engaging in sexually explicit conduct.

18 U.S.C. § 2256(8)(B). It is section 2252A(a)(5)(B) and its corresponding definition of "child pornography" (contained in section 2256(8)(B)) which Defendant challenges.

In 1996, Congress enacted the CPPA to supplement existing federal law regulating child pornography. The CPPA is aimed at curbing the growing problem of the effects of computer technology upon the child pornography industry. Congress found that

> new photographic and computer imagining technologies make it possible to produce by electronic, mechanical, or other means, visual depictions of what appear to be children engaging in sexually explicit conduct that are virtually indistinguishable to the unsuspecting viewer from unretouched photographic images of actual children engaging in sexually explicit conduct.

Child Pornography Prevention Act of 1996, Pub.L. No. 104–208, div. A, tit. I, § 121(1)(5), 110 Stat. 3009–26 (1996). To combat the impact of this new technology, Congress added the term "child pornography" to the list of definitions contained in section 2256 and enacted section 2252A to prohibit the transportation, receipt, distribution, reproduction, and possession of child pornography as defined by the CPPA.

## II. DISCUSSION

Defendant's constitutional challenge to section 2252A(a)(5)(B) is premised upon its prohibition of child pornography as defined in section 2256(8). Specifically, Defendant objects to the language in section 2256(8)(B) which draws within the scope of child pornography those visual depictions which "appear to be[ ] of a minor." 18 U.S.C. § 2256(8)(B). In encouraging the Court to find the statute unconstitutional, Defendant relies on two arguments. First, he asserts that the statute prohibits constitutionally protected speech by banning adult pornography. Second, Defendant claims that the language forbidding images that appear to be of minors engaging in sexually explicit activities is vague and overbroad, in violation of the First Amendment. The Court will address Defendant's arguments separately. As ex-

plained below, Defendant's first argument must fail, but Defendant's second argument on the grounds of vagueness and overbreadth is meritorious.

### A. Prohibition of Constitutionally Protected Speech

■ Defendant argues that because the statute prohibits sexually explicit visual depictions of persons who only *appear to be* minors, it prohibits depictions which enjoy the protections of the First Amendment. Private possession of adult pornography is constitutionally protected expression. *See Stanley v. Georgia*, 394 U.S. 557, 559, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). The Supreme Court has held that "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (quoting *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)). Analysis of these three requirements indicates that 18 U.S.C. § 2252A(a)(5)(B) is a time, place, or manner regulation which does not violate the First Amendment.

#### 1. *Content Neutrality*

■ Government regulation is content neutral "so long as it is 'justified without reference to the content of the regulated speech.'" *Id.* (quoting *Community for Creative Non–Violence*, 468 U.S. at 293). This requirement is satisfied if the regulation is "'aimed to control secondary effects resulting from the protected expression' rather than at inhibiting the protected expression itself." *Tollis Inc. v. San Bernardino County*, 827 F.2d 1329, 1332 (9th Cir.1987) (citations omitted); *see also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). In assessing the content neutrality of a regulation of protected expression, "[t]he government's pur-

pose is the controlling consideration." *Ward,* 491 U.S. at 791. The government's purpose in including language regulating images that *appear to be* of children engaged in sexually explicit activities is to address harmful secondary effects flowing from the existence and availability of such images rather than to suppress the individual ideas contained in such materials.

Defendant argues that the government's interest is limited to the protection of children through the prevention of visual depictions of actual children.[2] However, the government argues, and the Court concurs, that there are significant harmful effects for children resulting from the exchange of materials appearing to depict children engaged in sexually explicit activities. In *Osborne v. Ohio,* 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), the Supreme Court concluded that a number of factors justify regulating possession of child pornography. First, there is the harm to the children featured in the pornographic materials: "[t]he pornography's continued existence causes the child victims continuing harm by haunting the children in years to come." *Osborne,* 495 U.S. at 111. Second, "evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." *Id.* Finally, the existence of child pornography stimulates the market for such materials, and penalizing the trafficking and possession of child pornography is a logical measure toward decreasing the market for child pornography. *Id.* at 109–10.[3]

Clearly, the harmful effects of pornography depicting persons who appear to be children will be identical to those of pornography depicting actual children, with the exception of the harm resulting from personal involvement in the production of the pornography. If a sexually explicit image appears to be that of a child and is, in fact, virtually indistinguishable from an image of an actual child, it will have the same negative effects, both in stimulating pedophiles and sex abusers of children and in luring children into sexual activity. Similarly, pornography featuring images that appear to be of children will stimulate the market for child pornography in the same way as pornography featuring actual children. The Court thus concludes that the language that Defendant objects to is designed to ameliorate significant harmful secondary effects of the protected speech rather than suppress the speech itself and, as such, is content-neutral.

### 2. *Narrowly Tailored*

The second requirement is that the regulation "must be narrowly tailored to serve the government's legitimate, content-neutral interests." *Ward,* 491 U.S. at 798. The regulation "need not be the least restrictive or least intrusive means" of serving the governmental interests. *Id.* "[T]he requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved

2. In making this assertion, Defendant relies upon Supreme Court decisions preceding the enactment of the CPPA, such as *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) and *Osborne v. Ohio,* 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), in which the Supreme Court emphasized the government interest in preventing the sexual exploitation of actual children used in the production of child pornography. In stressing this interest, the *Ferber* Court even suggested using young-looking adults or simulations as constitutionally protected alternatives to the use of actual children. *Ferber,* 458 U.S. at 763. However, in light of Congress's findings and its purposes in enacting the CPPA, the Court is convinced that the language of *Ferber* does not render the CPPA unconstitutional.

3. The congressional findings supporting the enactment of the CPPA specifically state that "child pornography is often used as part of a method of seducing other children into sexual activity." Child Pornography Prevention Act of 1996 ("CPPA"), Pub.L. No. 104–208, div. A, tit. I, § 121(1)(3), 110 Stat. 3009–26 (1996). Further, Congress has found that "child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children ." CPPA, Pub.L. No. 104–208, div. A, tit. I, § 121(1)(4), 110 Stat. 3009–26. In addition, Congress has found that the existence and traffic of child pornography "inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children." CPPA, Pub.L. No. 104–208, div. A, tit. I, § 121(1)(10)(B), 110 Stat. 3009–27.

less effectively absent the regulation.' " *Id.* at 799 (citations omitted). However, the regulation may not be such that "a substantial portion of the burden on speech does not serve to advance [the government's] goals." *Id.*

Undeniably, the government has a strong interest in preventing the harms caused by child pornography. "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). The statute directly advances this objective by limiting the possession and distribution of visual depictions that are, or appear to be, of children engaged in sexual activities. *See* 18 U.S.C. § 2252A(a) and § 2256(8). Thus, the statute is narrowly tailored to accomplish its objective; it does not criminalize all depictions which appear to be of children. Rather, it prohibits only those which appear to be of children engaging in sexually explicit conduct as specifically defined by the statute.[4] Given the Court's conclusions about the harmful secondary effects of pornography depicting persons who are apparently children and the limits of the statutory language, the Court determines that 18 U.S.C. § 2252A(a)(5)(B) is narrowly tailored to the important goal of preventing sexual exploitation and abuse of children.

### 3. *Allowing Ample Alternative Channels of Communication*

The statute does not completely proscribe possession and distribution of visual depictions appearing to be of children. Rather, the statute criminalizes only a narrow segment of such depictions: those which appear to be depictions of children engaging in sexually explicit conduct as defined by the statute. Through an affirmative defense,[5] the statute leaves individuals free to distribute adult pornography as long as they do not market it as depicting children engaged in sexually explicit conduct. *See* 18 U.S.C. § 2252A(c). Consequently, the statute provides ample opportunities for alternative communication of ideas. Accordingly, because the statute is a content-neutral means of advancing a substantial government interest while permitting ample alternative means of communication, *see Ward*, 491 U.S. at 791, it does not prohibit constitutionally protected speech in a manner which violates the First Amendment.

### B. Vagueness and Overbreadth

An otherwise constitutional statute regulating speech may be rendered unconstitutional if its language is impermissibly vague. To avoid being characterized as impermissibly vague, a statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (citations omitted). This is especially important in the context of the First Amendment because vagueness may inhibit the exercise of the freedoms protected by the First Amendment. *See Grayned v. City of Rockford*, 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Defendant argues that section 2252A(a)(5)(B), in conjunction with the definition of "child pornography" contained in section 2256(8)(B), does not clearly identify the conduct which it prohibits. The

---

**4.** The statute defines the term "sexually explicit conduct" to include actual or simulated sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, and lascivious exhibition of the genitals or pubic area. 18 U.S.C. § 2256(2).

**5.** Section 2252A(c) provides:

It shall be an affirmative defense to a charge of violating paragraphs (1), (2), (3), or (4) of subsection (a) that—

(1) the alleged child pornography was produced using an actual person or persons engaging in sexually explicit conduct;

(2) each such person was an adult at the time the material was produced; and

(3) the defendant did not advertise, promote, present, describe, or distribute the material in such a manner as to convey the impression that it is or contains a visual depiction of a minor engaging in sexually explicit conduct.

18 U.S.C. § 2252A(c). This affirmative defense does not apply to violations for possession of child pornography under section 2252A(a)(5), the section pursuant to which Defendant is charged.

definition of "child pornography" includes visual depictions which "appear to be[ ] of a minor," as well as those which are of a minor. 18 U.S.C. § 2256(8)(B). Section 2256(1) defines the term "minor" as "any person under the age of eighteen years." 18 U.S.C. § 2256(1).

▮▮▮ Defendant asserts that the definition of "child pornography," which includes visual depictions that *appear to be of minors* engaged in sexually explicit conduct, is too subjective to enable ordinary persons to know with certainty what conduct is prohibited by the statute. The Court acknowledges it can be quite difficult to distinguish between some teenagers and young adults who have reached the age of legal maturity. The CPPA's definition of "child pornography" creates substantial uncertainty for viewers presented with materials depicting post-pubescent individuals, for the determination as to whether those individuals have yet reached eighteen years of age will often not be easy or clear. Further, it will be equally difficult for viewers to classify computer-generated images according to this subjective standard. Although the Court realizes that it is unrealistic to expect "mathematical certainty" from statutory language, *see Grayned,* 408 U.S. at 110, the language contained in section 2256(8)(B) fails to clarify with sufficient definiteness the conduct which is prohibited. For this reason, section 2252A(a)(5)(B), as applied with the definition of "child pornography" contained in section 2256(8)(B), is unconstitutionally vague.[6]

▮▮▮ According to the Supreme Court, a statute may be " 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned,* 408 U.S. at 114. "[O]verbroad laws, like vague ones, deter privileged activity." *Id.* However, "where a statute regulates expressive conduct, the scope of the statute does not render it unconstitutional unless its overbreadth is not only 'real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' " *Osborne,* 495 U.S. at 112 (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Defendant argues that a sub-

---

**6.** The Court has a duty to "interpret federal statutes so that they are consistent with the federal Constitution whenever possible." *United States v. Gendron,* 18 F.3d 955, 959 (1st Cir. 1994). In attempting to fulfill this duty, the Court carefully considered avenues of analysis which would save the challenged sections of the CPPA. The Court determined that the crux of the problem presented is the term "minor" as it is used in the definition of "child pornography." Because individuals who are actually over the age of eighteen years often appear to be younger, the Court considered narrowly construing the term "minor" in section 2256(8)(B) to mean "child." This construction, pursuant to the doctrine of *ejusdem generis,* would prevent the meaning of the term "minor" from exceeding the scope of the specific words being defined, that is, the term "child pornography," and thus ultimately eliminate the uncertainty as to what conduct is prohibited.

One dictionary defines a "child" as "a young person esp. between infancy and youth." Webster's Ninth New Collegiate Dictionary (1981). Another defines a "child" as "a person between birth and puberty." American Heritage Dictionary (2d ed.1982). As so defined, the characteristics of a child are not subject to the same confusion as those of a person under the age of minority. The characteristics of a prepubescent individual, such as a lack of sexual development, physical maturity, and body hair, are easily identifiable. The visual depiction of a child would not be so subjective that it leaves ordinary persons uncertain as to whether their conduct is prohibited.

This solution, however, creates several problems. First, by construing the term "minor" as used in section 2256(8)(B) to mean "child," a certain segment of visual depictions would escape the purview of section 2252A. Sexually explicit visual depictions which are, or appear to be, of persons between childhood and the age of eighteen years would not be punishable under section 2252A. The Court is convinced that Congress did not intend this result, most obviously because section 2256(1) defines the term "minor" to encompass a significantly broader spectrum of persons than does the term "child." 18 U.S.C. § 2256(1). Second, while Defendant's specific objection is with the language of section 2256(8)(B), the Court cannot ignore the fact that the definition of "child pornography" contained in section 2256(8) has four subsections, all of which use the word "minor." Construing the word "minor" to mean "child" in subsection (B) based upon the doctrine of *ejusdem generis* would necessarily result in the same construction for the other subsections of the definition. This, in turn, would create uncertainty as to section 2256(9), which defines the term "identifiable minor," a term used in subsection 8(C) of the definition of "child pornography." The Court ultimately concluded that this option is unsatisfactory because it excludes conduct that Congress intended the CPPA to encompass and creates significant confusion.

stantial amount of protected expression involving young-looking adults will be chilled by this statute.

The Court determines that section 2252A(a)(5)(B), incorporating the definition of "child pornography" in section 2256(8)(B), sweeps within its prohibitions substantial protected expression. Because of the definition of "minor" and its role in the definition of "child pornography," the statute impacts a significant amount of adult pornography featuring adults who appear youthful. In light of the criminal penalties for violating section 2252A,[7] the Court concludes that expression involving such adults will be chilled by the subjective language of the statute. Thus, the statute is unconstitutionally overbroad.

## III. CONCLUSION

The Court concludes that section 2252A(a)(5)(B) of the CPPA, and its incorporated definition of "child pornography" contained in section 2256(8)(B), is constitutionally invalid. Accordingly, it is **ORDERED** that Defendant's Motion be, and it is hereby, **GRANTED.**

---

7. Section 2252A(b)(2) provides:
   Whoever violates, or attempts to violate, subsection (a)(5) shall be fined under this title or imprisoned not more than 5 years, or both, but, if such person has a prior conviction under this chapter or chapter 109A, or under the laws of any State relating to the possession of child pornography, such person shall be fined under this title and imprisoned for not less than 2 years nor more than 10 years.