# United States Court of Appeals

## For the First Circuit

No. 03-1741

UNITED STATES OF AMERICA,

Respondent, Appellant,

v.

DAVID HILTON,

Petitioner, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. Senior District Judge]

Before

Torruella and Howard, Circuit Judges,
and Schwarzer,* Senior District Judge.

F. Mark Terison, Senior Litigation Counsel, with whom Paula D.
Silsby, United States Attorney, was on brief, for appellant.
Bruce M. Merrill, on brief, for appellee.

**ON PETITION FOR REHEARING**

September 27, 2004

---

* Of the Northern District of California, sitting by designation.

**Per Curiam**.  David Hilton was convicted of a one-count violation of 18 U.S.C. § 2252A(a)(5)(B), the Child Pornography Prevention Act ("CPPA"), on June 30, 2000.  In light of the Supreme Court's decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), holding that the government may not criminalize possession of non-obscene sexually explicit images that appear to, but do not in fact, depict actual children, Hilton sought and was granted post-conviction relief under 28 U.S.C. § 2255.  The government appeals.  Because the habeas court correctly held that the trial court did not find every element of the crime, we affirm the grant of relief vacating Hilton's conviction.

## I.  Procedural History

### A.  Indictment, Dismissal and Appeal

Based on evidence discovered by local law enforcement pursuant to a valid search warrant, a federal grand jury indicted Hilton on December 17, 1997, charging him with a one-count violation of 18 U.S.C. § 2252A(a)(5)(B).[1]  Hilton moved to dismiss the indictment, arguing that the CPPA violated the First Amendment.  Section 2252A(a)(5)(B) criminalizes the knowing possession of child

---

[1]  The statute provides that "Any person who . . . knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer . . . shall be punished . . . ."  18 U.S.C. 2252A(a)(5)(B).

-2-

pornography that has traveled between states or between countries. Hilton's First Amendment challenge involved the definition of "child pornography" in 18 U.S.C. § 2256(8). That provision defines child pornography to include "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(B). Section 2256(8)(B) was added by Congress in 1996 after finding that "new photographic and computer imaging technologies make it possible to produce by electronic, mechanical, or other means, visual depictions of what appear to be children engaging in sexually explicit conduct that are virtually indistinguishable to the unsuspecting viewer from unretouched photographic images of actual children engaging in sexually explicit conduct." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, div. A, tit. I, § 121 (1)(5), 110 Stat. 3009-26 (1996) (emphasis added).

Hilton argued that this new definition violated the First Amendment by prohibiting some adult pornography -- that appearing to be of children -- and by virtue of vagueness and overbreadth. The district court agreed, holding that the CPPA's "appears to be" provision was overbroad and left unclear exactly what images were illegal. The district court dismissed the indictment on March 26,

1998.  United States v. Hilton, 999 F. Supp. 131 (D. Me. 1998) ("Hilton I").  The United States appealed, and this court reversed and reinstated the indictment.  See United States v. Hilton, 167 F.3d 61 (1st Cir. 1999) ("Hilton II").

### B.  Trial and Appeal

After the Supreme Court denied Hilton's petition for certiorari, the case advanced to trial.  Hilton waived his right to a jury trial.  After the issuance of a superseding indictment on January 5, 2000, the district court heard the case against Hilton over the course of three days.  This court reviewed the district court's findings extensively in United States v. Hilton, 257 F.3d 50 (1st Cir. 2001) ("Hilton IV") (reviewing United States v. Hilton, No. 97-78-P-C, 2000 U.S. Dist. LEXIS 9220 (D. Me. June 30, 2000) ("Hilton III")).  Here we concentrate on the evidence at issue in this appeal.

The search of Hilton's computer room on November 7, 1997 produced a number of pornographic images.  These were found on a Sony Backup Tape, in Hilton's hard drive, and printed up and stored in a "gray box."  According to Agent Marx of the local police, whom the parties stipulated as a computer forensics expert, the Sony Backup Tape was used to back up Hilton's computer two months before seizure.  The Sony tape contained thousands of images; the government introduced seven of them.  The "gray box" contained a print-out with four images identical to four in the Sony tape.  The

hard drive contained three images, and this court on review found two to be non-explicit.  See Hilton IV, 257 F.3d at 58.

To prove that these images depicted children, rather than adults, the government introduced the testimony of Dr. Lawrence Ricci.  Dr. Ricci testified as to the Tanner Scale and its application to the seized images.  The Tanner Scale was developed through analysis of many children both in the United States and throughout the world and provides a basis for estimating a person's stage of physiological development.  Dr. Ricci marked on the backs of the images his opinion as to the children's ages.  In his opinion, apart from an image that morphed a child's face with an adult woman's body, the other nine images represented children at various stages of development, ranging from pre-school to young teen.  See Hilton III, 2000 U.S. Dist. LEXIS 9220 at *23-26.

Based on this evidence, the district court found beyond a reasonable doubt that the images satisfied the definition of child pornography in 18 U.S.C. § 2256(8).  The court also found the required element of scienter and an interstate nexus.  Since the court did not find merit in Hilton's affirmative defenses that he was possessing the images under authority of the government, it convicted Hilton on June 30, 2000, and subsequently sentenced him to forty months imprisonment.

Hilton appealed his conviction, challenging the constitutionality of the CPPA and the sufficiency of the evidence.

-5-

He reiterated his affirmative defense that he had collected the images at the government's request. Hilton IV, 257 F.3d 50. Hilton also claimed that the district court erred in his sentencing. We rejected all but the sentencing claim. Since we concluded that two of the three hard drive images did not qualify as child pornography or did not involve the sexual exploitation of a minor, we remanded for resentencing because the record did not support the Sentencing Guidelines upward adjustment applied by the district court for possession of "ten or more . . . items, containing a visual depiction involving the sexual exploitation of a minor." U.S.S.G. § 2G2.4(b)(2); see Hilton IV, 257 F.3d at 58. As for Hilton's constitutional challenge, we noted that we had "rejected this claim on Hilton's earlier appeal." Hilton IV, 257 F.3d at 53. Hilton asked us to reconsider our prior holding in light of the Ninth Circuit's decision in Free Speech Coalition v. Reno, 198 F.3d 1083 (9th Cir. 1999), but we declined to do so.[2] Id. Thus, on July 27, 2001, we affirmed Hilton's conviction and remanded for resentencing.

On remand, the district court sentenced Hilton to thirty-four months of incarceration.

---

[2] We noted that "the Ninth Circuit struck down only those portions of the Act making illegal possession of computer generated images of fictitious children." Hilton IV, 257 F.3d at 53. The government argues that this language implies that we found Hilton's images to represent actual children. Our review here, though, concerns the findings of fact the district court actually made.

-6-

## C. **The CPPA after Ashcroft v. Free Speech Coalition**

While Hilton's direct appeal was pending, the Supreme Court granted certiorari to review the Ninth Circuit's Free Speech Coalition v. Reno, 198 F.3d 1083 (9th Cir. 1999), a civil suit challenging on its face the constitutionality of the CPPA as amended in 1996. The key challenge, and the one relevant here, was against prosecution for "child pornography" that only "appears to be, of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(B). In Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), the Court affirmed the Ninth Circuit holding that such prosecutions violate the First Amendment's protection against governmental abridgement of the freedom of speech. Id. at 258; see U.S. Const. amend. I.

The First Amendment does not protect obscenity, Miller v. California, 413 U.S. 15 (1973), or the possession of child pornography produced using children. Osborne v. Ohio, 495 U.S. 103, 110 (1990) ("It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute.") (quoting New York v. Ferber, 458 U.S. 747, 761-62 (1982) (quoting Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498 (1949))).

The CPPA is not circumscribed by the <u>Miller</u> definition of obscenity. <u>Free Speech Coalition</u>, 535 U.S. at 246.[3] Therefore, since the "appears to be" definition prohibits non-obscene speech, the <u>Free Speech Coalition</u> Court addressed the government's contention that the rationale behind <u>Osborne</u> and <u>Ferber</u> extended to the criminalization of sexually explicit images that appear to contain children. Those two cases viewed the trade in and possession of child pornography as bearing a proximate link to the child abuse that produced the images in the first place. See <u>Free Speech Coalition</u>, 535 U.S. at 249-50. The government presented two types of arguments to show that the prohibition on virtual

---

[3] Congress has responded with amendments to the CPPA in the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT") that specify a class of obscene child pornography reaching "Any person who . . . knowingly produces, distributes, receives, or possesses with intent to distribute, a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that:

> (1) (A) depicts a minor engaging in sexually explicit conduct; and
> (B) is obscene; or
> (2) (A) depicts an image that is, or appears to be, of a minor engaging in graphic bestiality, sadistic or masochistic abuse, or sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; and
> (B) lacks serious literary, artistic, political, or scientific value; or attempts or conspires to do so, shall be subject to the penalties provided in section 2252A(b)(1), including the penalties provided for cases involving a prior conviction.

18 U.S.C. § 1466A(a) (2003).

pornography was indeed proximate to compelling interests; one argument was based on the injuries allegedly flowing from "appears to be" child pornography and the second on prosecutorial necessity.

Two concerns motivated the first argument: (1) that "pedophiles may use virtual child pornography to seduce children," id. at 251, and (2) that virtual child pornography "whets the appetites of pedophiles and encourages them to engage in illegal conduct." Id. at 253. Contrary to our earlier conclusion in Hilton II, 167 F.3d at 72-74, the Court held that the availability of virtual child pornography to child abusers does not provide a basis for the prohibition because while "[t]he objective is to prohibit illegal conduct . . . this restriction goes well beyond that interest by restricting the speech available to law-abiding adults." Id. at 252-53. As for the concern that virtual child pornography motivates child abuse, the Court disagreed with the premise behind the government's argument: "[t]he mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." Free Speech Coalition, 535 U.S. at 253. Because "[t]he Government has shown no more than a remote connection between speech that might encourage thoughts or impulses and any resulting child abuse," it "may not prohibit speech on the ground that it may encourage pedophiles to engage in illegal conduct." Id. at 253-54.

The government's second argument was that eliminating actual child pornography necessitates the prohibition on virtual pornography because virtual images are indistinguishable from real ones. Id. at 254-55. First, the government contended that "[v]irtual images . . . are indistinguishable from real ones[, and] they are part of the same market and are often exchanged." Id. at 254. The Court found this "hypothesis . . . somewhat implausible. If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice." Id. To the government's claim that indistinguishability meant that the successful prosecution of actual child pornography necessitated criminalization of virtual child pornography, the Court responded: "[t]he argument, in essence, is that protected speech may be banned as a means to ban unprotected speech. This analysis turns the First Amendment upside down." Id. at 255. Thus the Court held that possession of material that satisfied only § 2256(8)(B) could not be punished.[4] Id. at 256.

---

[4] The Court applied the same reasoning to find § 2256(8)(D) contrary to the First Amendment. That section, defining as prohibited child pornography "such visual depiction [that] is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct," is not at issue in this case.

### D.   **Post-Conviction Relief**

Based on the Court's ruling in Free Speech Coalition, Hilton filed a motion for post-conviction relief under 28 U.S.C. § 2255 on November 13, 2002.  The magistrate judge hearing the petition agreed that Hilton was entitled to relief.  United States v. Hilton, Crim. No. 97-78-P-C, Civ. No. 02-235-P-C, 2003 U.S. Dist. LEXIS 4208, (D. Me. March 20, 2003) ("Hilton V").  The district court adopted that recommendation and vacated Hilton's conviction.  United States v. Hilton, Crim. No. 97-78-P-C, Civ. No. 02-235-P-C, 2003 U.S. Dist. LEXIS 8130, 2003 WL 21135703 (D. Me. May 15, 2003).  The government's appeal has placed Hilton's petition before this court.

## II.   **Analysis**

After Free Speech Coalition, the government must prove that an image depicts actual children to sustain a § 2252A(a)(5)(B) conviction.  Both parties agree that the holding of Free Speech Coalition applies retroactively, as it "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe."  Teague v. Lane, 489 U.S. 288, 311 (1989) (quoting Mackey v. United States, 401 U.S. 667, 675 (1971) (Harlan, J., concurring in part and dissenting in part)).

It bears repeating that the government is not released from its burden of proof by a defendant's failure to argue, or by

-11-

an absence of evidence otherwise suggesting, the artificiality of the children portrayed.  That the children in the images are real amounts to an element of the crime which the government must prove, the burden of which should not be displaced to the defendant as an affirmative defense.  Cf. Free Speech Coalition, 535 U.S. at 256. "Protected speech does not become unprotected merely because it resembles the latter."  Id. at 255.  Instead, "[t]he Constitution gives a criminal defendant the right to demand that [the factfinder] find him guilty of all the elements of the crime with which he is charged."  United States v. Gaudin, 515 U.S. 506, 511 (1995).  In the present case, that the children in the images are real is an element of the crime; Hilton therefore had a right to have the factfinder decide whether the children were real.  Id.

The government urges that "a factual review compellingly demonstrates that the images Hilton possessed were indeed of actual children."  The question before us, though, does not call for our evaluation of the evidence but rather of what the trial court actually found.[5]  The government advances one argument we must address, namely, that in finding, according to Dr. Ricci's testimony, that the images represented children rather than adults, the trial court necessarily concluded as a matter of fact that the children were real.  According to the government, it is

_____

[5]  Because the government failed effectively to preserve the issue of harmless error review on appeal, we do not address that issue.

-12-

"commonsense" that findings as to age based on the Tanner Scale satisfy the further element of actuality:

> The "Tanner Scale" was developed through an analysis of "large numbers of children" both in the United States and throughout the world. Commonsense establishes that the scale was developed through the assessment of actual children. The reasonable and commonsense inference is also that Dr. Ricci, as an expert pediatrician, would apply the "Tanner Scale" only to actual children.

We find more commonsensical a proposition leading to the contrary inference that someone manufacturing images to look like children will try -- and with sufficient technology will manage -- to produce images that would be amenable to expert analysis under the Tanner Scale. Whatever parameters of body proportion, growth and development serve as signs of age under the Tanner Scale, those parameters will be mimicked by the virtual pornographer -- whether by design or as a byproduct of the goal of realism.

We cannot endorse the view that it is commonsense that the trial court also found -- or must have found -- that the images represented real children. Rather, it is plain to us that the trial court found Hilton guilty of possessing images that appeared to be children engaged in sexually explicit conduct. Under the erroneous understanding at the time of conviction, possession of child pornography could be punished criminally even if the depicted children were artificial and real children were not involved in the production of the images. Because the trial court did not make a

-13-

finding of fact as to an essential element of the crime -- the reality of the children represented in the images -- we affirm the grant of habeas relief.

**<u>Affirmed</u>**.