TORRUELLA, Circuit Judge,
concurring in the judgment.
I agree with the majority that the district court erred in excluding the three images from evidence. I write separately because I disagree with the majority’s analysis and also because the majority does not give due weight to circuit precedent. I first present my own analysis for excluding the three images and second note my disagreements with the majority’s analysis.
I. Exclusion of the Exhibits Under Fed.R.Evid. 104(a)
As ably described in the majority opinion, Congress has made it a crime to possess visual depictions of minors engaging in sexually explicit conduct. 18 U.S.C. § 2252(a)(4)(B). The term “sexually explicit conduct” includes the “lascivious exhibition of the genitals or pubic area.” Id. § 2256(2)(A). Congress did not further define the term “lascivious.”
Finding that more guidance was necessary, the district court in United States v. Dost enumerated a list of factors to consider in determining whether a picture lasciviously exhibits the genitals or pubic area. 636 F.Supp. 828, 832 (S.D.Cal.1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir.1987). Several circuits, including ours, have referred to the Dost factors in considering whether images lasciviously exhibit the genitals or pubic area. See United States v. Amirault, 173 F.3d 28, 31 (1st Cir.1999) (citing cases). While we found that the Dost factors were generally relevant and provided guidance, our embrace of them was only equivocal. Id. at 32. We found that the factors “are neither comprehensive nor necessarily applicable in every situation” and that “there may be other factors that are equally if not more important in determining whether a photograph contains a lascivious exhibition.” Id.
Before considering whether a reasonable jury could find the three images lascivious, *92 I wish to note several background principles relevant to our analysis. First, I believe that an important consideration, which was not directly addressed by Dost nor by the district court, is whether the production or existence of the picture is harmful to the depicted child. Clearly, the protection of children from sexual exploitation is “a government objective of surpassing importance.” New York v. Ferber, 458 U.S. 747, 757, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). The victims of child pornography can be harmed not only by the production of the pornography but also by the continued existence of the pornography on the Internet. See id. at 759-60, 102 S.Ct. 3348 & n. 10. Furthermore, the existence of the pornography can be harmful to the child even if its production was not (e.g., if photographs were surreptitiously taken).
In passing and amending laws prohibiting child pornography, Congress has clearly been concerned with protecting children from harm. See Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996) (finding that child pornography “is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved.”); Child Abuse Victims’ Rights Act of 1986, Pub.L. No. 99-591, 100 Stat. 3341-74 (1986) (recognizing “the physiological, psychological, and emotional harm caused by the production, distribution, and display of child pornography by strengthening laws prescribing such activity”); Child Protection Act of 1984, Pub.L. No. 98-292, 98 Stat. 204 (1984) (finding that “the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the individual child and to society”). The government is prosecuting Defendant for violating 18 U.S.C. § 2252. This statute is titled “Certain activities relating to material involving the sexual exploitation of minors” and is under the chapter titled “SEXUAL EXPLOITATION AND OTHER ABUSE OF CHILDREN.”
It is my belief that Congress intended that the perceived harm to the depicted child by the production or existence of the picture be an essential factor in determining whether a picture lasciviously depicts the genitals or pubic area. While the Dost factors address the harm to the child in an oblique manner, I instead put the harm at the forefront of the analysis. See Amirault, 173 F.3d at 32 (stating that the Dost factors “are neither comprehensive nor necessarily applicable in every situation”). To the extent that the Dost factors address the harm to the child, they will be relevant to my analysis.
The notion of what depictions are harmful to the child cannot help but be informed by cultural norms. While the act of exploiting a child is harmful by definition, certain displays of nudity may be harmful solely because they are socially unacceptable. These social norms are not universal. In some cultures, nudity may be commonplace while, in others, the appearance of a woman’s eyes may be lascivious. See Ferber, 458 U.S. at 775, 102 S.Ct. 3348 (O’Connor, J., concurring) (noting the relevance of cultural norms to the harmfulness of a picture). These norms will also evolve over time. See Clay Calvert, The Perplexing Problem of Child Modeling Web Sites: Quasi-Child Pornography and Calls for New Legislation, 40 Cal. W.L.Rev. 231, 253-54 (2004). In prohibiting lascivious pictures of children, I believe Congress intended to prohibit pictures where, given our cultural norms, the content is harmful to the depicted child.
With these background principles in mind, I now address the three images that are the subject of this appeal. First, the age and developmental state of the depict *93 ed child is relevant to the harm caused and thus the lasciviousness of the images. A picture of a nude child is more likely to be harmful to the child when the depicted child is an adolescent or prepubescent rather than an infant. This is not because infants are beyond the perverse interests of pedophiles, but because nude pictures of infants are so widely approved in our culture that such pictures are less likely to cause harm to the child. The government has evidence that the depicted girls were ten to twelve years old at the time the pictures were taken, and the pictures are consistent with this evidence. Because a picture of a nude ten-to-twelve-year-old child is not socially acceptable, an exhibition of the child’s genitals or pubic area is more likely to be harmful to the child.
Second, the portrayal of the child must be considered in determining whether an image is lascivious. Analyzing the content of an image for sexually explicit content is a fractious issue. We have previously held that “the statute requires more than mere nudity” because otherwise “the requirement of ‘lasciviousness’ would be superfluous.” Amirault, 173 F.3d at 33. Yet, other circuits have found that nudity is not required for a lascivious exhibition. United States v. Horn, 187 F.3d 781, 789-90 (8th Cir.1999); United States v. Knox, 32 F.3d 733, 745-46 (3d Cir.1994). In the three images, the girls are nude and their genitals are clearly visible. The girls are posing for the camera, but the poses are neutral in the sense that the images would be unremarkable if the girls were clothed. The images are in the form of a portrait as the girls’ bodies are the focus of the image with nothing of significance in the background. The images are jarring, more because of the cultural taboo regarding nude pictures of prepubescent girls than because of the specific portrayal of the girls. In light of our cultural norms, the primary purpose of the three images appears to be the display of the girls’ genitals. Regardless of whether or not the girls were exploited in the production of these images, the girls are being sexually exploited by the continued existence of these images.
I therefore believe that a reasonable jury could find that the three images lasciviously display the girls’ genitals or pubic area in violation of 18 U.S.C. § 2252(a)(4)(B).
II. Disagreements with the Majority
A. The meaning of lascivious in the statute
Section I of the majority opinion exhorts that we should not elaborate on the meaning of “lascivious” in 18 U.S.C. § 2256(2)(A)(v). The majority states the statute “needs no adornment” and that “[fjurther definitional guides are not required.” I disagree with the majority’s reasoning and believe that we need to provide greater clarity as to Congress’ intent in prohibiting child pornography.
Although the constitutionality of the federal child pornography statute is not an issue on appeal, the majority notes that the federal statute meets the constitutional requirements set out in Ferber, see 458 U.S. at 764-66, 102 S.Ct. 3348, and that the statute is not unconstitutionally over-broad, see id. at 766-74, 102 S.Ct. 3348. Although these legal conclusions are sound, the majority then applies them unsoundly. In sum, the majority argues that, since the statute is constitutional, courts must not provide further guidance as to Congress’ intent.[18] I fail to see, *94 however, how the satisfaction of constitutional requirements precludes federal courts in appropriate circumstances from saying precisely “what the law is.” Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803). Courts routinely interpret the meaning of constitutional statutes, and this being an “appropriate circumstance,” I see no reason to refrain from doing so here.[19]
The meanings of lewd and lascivious in the obscenity and child pornography statutes pose a difficult issue that requires clarification. If the girls depicted in the three images were eighteen years old and this case arose under an obscenity statute, it is beyond dispute that no reasonable jury could find that the images lewdly display the genitals.[20] We are now proceeding under a child pornography statute and finding that a reasonable jury could find that the images lasciviously depict the genitals of the ten-to-twelve-year-old girls despite the fact that Supreme Court precedent suggests that lewd and lascivious are synonymous. See United States v. X-Citement Video, Inc., 513 U.S. 64, 78-79, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). Because these two outcomes do not blithely arise from the plain text of the statutes, judicial elaboration of the meanings of “lewd” and “lascivious” is necessary.
The majority’s exhortation to eschew further elaboration of the meaning of lascivious also runs counter to our binding circuit precedent in Amirault. In Amirault, we directly and clearly stated that district courts may use the Dost factors in determining whether an image is lascivious. Section IV of the Amirault opinion begins: “Using the Dost factors as guideposts, we turn now to the photograph to analyze whether it contains a lascivious exhibition of the genitals.” Amirault, 173 F.3d at 33. The Amirault court then considered each of the Dost factors in turn and concluded that the image in question was not lascivious. Id. at 33-35. Below, the district court applied the Dost factors in the same way as we did in Amirault. The majority, in holding that the district court inappropriately applied the Dost factors,[21] goes against Amirault and leaves *95 First Circuit case law in a contradictory state.
The majority attempts — unconvincingly, in my view — to use procedural posture to distinguish the issue before us from other First Circuit cases applying the Dost factors. See United States v. Hilton, 257 F.3d 50, 57-58 (1st Cir.2001) (applying the Dost factors at a sentencing hearing); United States v. Brunette, 256 F.3d 14, 17-18 (1st Cir.2001) (applying the Dost factors in determining the validity of a search warrant); Amirault, 173 F.3d at 30-31 (applying the Dost factors at a sentencing hearing). The majority is correct in noting that no circuit court has approved the use of the Dost factors to exclude evidence on the grounds that no reasonable jury could find the images lascivious, but no circuit court has disapproved of such use either. In my view, the Dost factors are either relevant or they are not. If the Dost factors are relevant in determining whether images are lascivious in the context of a sentencing hearing, then they are also relevant in determining whether a reasonable jury could find that images are lascivious in a hearing to exclude evidence before trial. The majority has not provided any persuasive rationale for such a distinction.
B. The four corners rule in determining lasciviousness
In discussing the deficiencies of the Dost factors, the majority criticized the district court for applying the “four corners rule” whereby factors external to the actual image, such as the circumstances surrounding the production of the image, are excluded from the determination as to whether an image is lascivious. I agree with the majority that Amirault did not adopt such a rule, but I disagree with the majority’s suggestion that the jury could consider the circumstances of the production of the image in determining lasciviousness.
First, the plain language of the statute is generally consistent with the four corners rule. The statute prohibits the knowing possession of five specifically defined types of visual depictions. In determining whether the possession of an image violates the statute, the fact finder must examine the content of the image. The circumstances of the production of the image are relevant to punishing the producer of the image but are of dubious relevance in punishing the possessor of the image, who is likely ignorant of the details of its production.
Second, the use of factors beyond the four corners of the image in punishing the possessor of the image creates serious constitutional concerns. The Court in Ferber made clear that “criminal responsibility may not be imposed [for possession of child pornography] without some element of scienter on the part of the defendant.” 458 U.S. at 765, 102 S.Ct. 3348. Where the possessor of an image is ignorant of the circumstances of the production of the image, the scienter requirement may be violated.
While I would not categorically prohibit any evidence beyond the four corners of the image, only in rare situations will such evidence be relevant and not offend constitutional requirements.
C. Description of the images
The majority’s description of the three images contradicts the description given by the district court. I would adopt the district court’s description of the images because it is more accurate. According to the majority, a reasonable jury could find that the images “foeus[] or particularly draw[ ] attention to the girls’ ... vaginas” and that “each girl was deliberately posed to exhibit her pubic area.” The majority *96 farther states that the girls’ postures are not “particularly natural or spontaneous” and were not “comfortable.” In contrast, the district court found that the “genitals or pubic area [were not] the focal point” of the images, that the “setting [was not] sexually suggestive at all,” and that the poses were not “unnatural.” My description of the images, above, comports with the description given by the district court and more accurately represents the images than does the majority’s description.
D. Standard of review
I agree with the majority that we review de novo the district court’s holding that no reasonable jury could find the three images lascivious and also agree with the majority’s reasoning. The majority’s justification for de novo review, however, is not the justification proffered by the parties. Both parties argued that the First Amendment demands heightened review of the district court’s holding. The majority did not consider this rationale, and I write further to state explicitly that First Amendment heightened review does not apply to this case. It is illustrative to consider three scenarios: the district court holds that (1) speech is unprotected; (2) speech is protected on constitutional grounds; and (3) speech is protected on statutory grounds.
(1)Speech is unprotected
It is well established that “in cases raising First Amendment issues ... an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression.” Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (emphasis added and internal quotation marks omitted). The appellate court must “be sure that the speech in question actually falls within the unprotected category and ... confine the perimeters of any unprotected category within acceptably narrow limits ... to ensure that protected expression will not be inhibited.” Id. at 505, 104 S.Ct. 1949. There is no need to distinguish whether a district court held speech unprotected on statutory or constitutional grounds, because the former implies the latter.
(2) Speech is protected on constitutional grounds
The role of the appellate court is less clear where the district court holds that speech is protected on constitutional grounds. Some circuits have held that heightened First Amendment review is only necessary to protect speech and does not apply where the speech has already been protected. See Multimedia Publishing Co. v. Greenville-Spartanburg Airport Dist., 991 F.2d 154, 160 (4th Cir.1993); Daily Herald Co. v. Munro, 838 F.2d 380, 383 (9th Cir.1988); Planned Parenthood Association/Chicago Area v. Chicago Transit Authority, 767 F.2d 1225, 1228-29 (7th Cir.1985). Other circuits have applied heightened review to all constitutional holdings defining the perimeters of unprotected categories of speech, regardless of whether the lower court held that speech was protected or unprotected. See Don’s Porta Signs, Inc. v. City of Clearwater, 829 F.2d 1051, 1053 n. 9 (11th Cir.1987); Lindsay v. San Antonio, 821 F.2d 1103, 1107-08 (5th Cir.1987). We have yet to address the issue, and we need not address it now since the court’s holding protecting speech was based on statutory grounds.
(3) Speech is protected on statutory grounds
The First Amendment determines the contours of the unprotected categories of *97 speech and proscribes Congress from prohibiting protected speech. Congress, however, need not prohibit unprotected speech to the extent allowed by the constitution or even prohibit any unprotected speech at all. The extent of speech prohibited by a constitutional statute must be contained within the contours of an unprotected category. Speech may thus fall into three categories: (a) protected by the constitution, (b) unprotected by the constitution and not prohibited by statute, and (c) unprotected by the constitution and prohibited by statute.
Where a district court makes a purely statutory holding that specific speech is not prohibited by statute, the district court is holding only that Congress has chosen not to prohibit the speech in question. In such a situation, the district court is not deciding whether or not Congress could prohibit the speech in question, only that it chose not to. This purely statutory holding clearly has no bearing on the contours of unprotected categories of speech and thus no constitutional significance that would require heightened review.
Below, the district court’s holding that no reasonable jury could find the three images lascivious was a purely statutory holding. The district court did not consider the contours of the unprotected category of child pornography and thus did not consider whether the three images were unprotected speech. Thus, the district court held only that no reasonable jury could find that the three images violated the child pornography statute passed by Congress. Since no constitutional issue is present, First Amendment heightened review does not apply.[22]
Considering the above, I respectfully disagree with the majority’s reasoning in this case but join in the reversal of the district court’s order excluding the three images from evidence.

. The majority also notes that other circuits have described lascivious as a "commonsensical term.” While I agree that the meaning of lascivious is, in large part, a matter of com *94 mon sense, I do not see how this precludes us from providing further guidance as to Congress' intent. Further, I reiterate that several circuits, including ours, have applied the Dost factors to supplement common sense. See Amirault, 173 F.3d at 31.

. Other considerations could apply if the appeal raised First Amendment issues, but the only issue on appeal is whether the district court erred in holding that no reasonable jury could find that the three images are lascivious under the federal statute. In discussing the standard of review, below, I explain in more detail why there is no constitutional question present on appeal.

. Because such images could not be obscene they could not be found to lewdly display the genitals. Such images would clearly satisfy the first prong of Miller in that they would appeal to the "prurient interest” and would satisfy the third prong in that they would not have "serious literary, artistic, political, or scientific value.” Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The images must then fail Miller’s second prong and must not "depict[] or de-scriben, in a patently offensive way, sexual conduct specifically defined by the applicable state law.” Id. The Miller court included "lewd exhibition of the genitals” as an example of a valid definition of patently offensive sexual conduct. Id. at 25, 93 S.Ct. 2607. It is thus clear that such images of eighteen-year-old women could not be found to lewdly display the genitals.

.The majority states that the district court "gave the Dost factors greater weight than warranted” and "accorded to them the same status as the statutory definition itself.” I do not see, however, how the district court’s application of the Dost factors differed significantly from that of the Amirault court.

. Moreover, it is not clear whether heightened First Amendment scrutiny applies at all to interlocutory appeals. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 & n. 23, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). In Seattle Times, the Supreme Court considered a First Amendment claim arising from a protective order issued during the discovery process and expressly refused to apply a heightened standard of review. Id. at 36, 104 S.Ct. 2199. The Court was wary that heightened review "would necessitate burdensome evidentiary findings and could lead to time-consuming interlocutory appeals.” Id. at 36, 104 S.Ct. 2199 n. 23. The perimeters of protected categories of speech are defined by final judgments but not by interlocutory decisions such as discovery orders and evidentiary rulings. See Lee v. DOJ, 413 F.3d 53, 58 (D.C.Cir.2005).